IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02431-CNS

WILLIAM MARVIN KLAES, individually
and on behalf of others similarly situated,

    Plaintiff,

v.

FRONTIER AIRLINES, INC.,

    Defendant.

**DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT
PURSUANT TO RULE 12(B)(6) AND (7)**

Defendant Frontier Airlines, Inc. ("Frontier") respectfully moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and (7), the Class Action Complaint ("Complaint") filed by Plaintiff William Marvin Klaes ("Plaintiff" or "Klaes") for the reasons set forth below.

## PRELIMINARY STATEMENT

Plaintiff's Complaint arises from allegations that he received a "non-refundable and inoperable" flight credit following cancellation of his flight on Frontier.[1] Compl. ¶ 17. As a threshold matter, the Complaint must be dismissed because Plaintiff has failed to state a claim <u>against</u> <u>Frontier</u>. The crux of Plaintiff's Complaint arises from his reliance on a November 1, 2022 email regarding Frontier's cancellation and flight credit policies. As stated in the Complaint, however, the November 1 email <u>was</u> <u>not</u> sent by any Frontier employee, agent, or representative – rather, it is from support@usairlinesservicesllc.com. This entity, US Airline Services LLC ("USAS"), holds itself out as "an independent travel service provider…not associated with Airlines in any way."[2] Plaintiff appears to have contracted with this entity to purchase tickets for travel on Frontier. USAS, not Frontier, was the entity communicating with Plaintiff and the one that misinformed him about the amount and expiration period of his flight credit. Compl. ¶ 16 (various email excerpts). Nor were any of the other email communications using the "Travel Desk" platform made by Frontier.[3] Accordingly, Plaintiff's claims do not lie with Frontier, and the action should be dismissed.[4] The Complaint also should be dismissed for failure to join USAS as a necessary party for resolution of the claims at issue.

Additionally, to the extent Plaintiff continues to pursue claims based on the flight credit issued

---

[1] Frontier issues "flight credits" (not vouchers) when a passenger, like Plaintiff, cancels a flight.
[2] *See* US Airline Services website at www.usairlineservicesllc.com/, at "Disclaimer," a true and correct screen capture of which is attached as **Exhibit 1**. The Court may take judicial notice of this website. *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).
[3] Indeed, numerous complaints have been made to the Better Business Bureau about this entity. *See* US Airline Services LLC | Complaints | Better Business Bureau® Profile (bbb.org) and **Exhibit 2**.
[4] During the meet-and-confer process, Frontier informed Plaintiff's counsel that Frontier was not the appropriate party for suit and suggested voluntary dismissal of the action to avoid motion practice. Counsel had an emergency and was unable to confer with his client prior to the deadline for this Motion.

1

to him by Frontier, such claims should be dismissed because, as set forth in detail below: (1) Plaintiff expressly waived his right to bring any class action against Frontier under the terms of Frontier's Contract of Carriage ("COC"); (2) his claims are expressly preempted by the Airline Deregulation Act ("ADA"), which bars state law claims that relate to an airline's "price, route or service." 49 U.S.C. § 41713; (3) his claims are impliedly preempted by federal oversight in this field; and (4) the Complaint fails to state any viable claim for relief against Frontier.

## PROCEDURAL HISTORY

On September 20, 2023, Plaintiff filed the Complaint against Frontier seeking declaratory and injunctive relief and refunds for allegedly issuing Plaintiff a "nonrefundable and inoperable" voucher. (Doc. 1.) Plaintiff asserts subject matter jurisdiction under the Class Action Fairness Act (CAFA), and sets forth an overbroad proposed nationwide class of "[a]ll persons in the United States who received a Voucher from Defendant from 2020 to the Present." *Id.* On October 4, 2023, Frontier filed a motion for a 60-day extension of time, through and including December 11, 2023, to respond to the Complaint (Doc. 7), which was granted on October 6, 2023 (Doc. 8).

## FACTUAL BACKGROUND

Frontier is a domestic commercial airline with its headquarters in Denver, Colorado. Plaintiff is a resident of Seymour, Indiana. On or about October 1, 2022, Plaintiff purchased two tickets apparently through USAS for travel on Frontier from Atlanta, Georgia to Punta Cana, Dominican Republic. Compl. ¶ 16; *see also* Declaration of Myriah Monteneri, attached as **Exhibit 3**, at Exh. A to Decl. (copy of Passenger Name Record ("PNR")). Plaintiff, through USAS, canceled the tickets on November 1, 2022. Compl. ¶ 16; Monteneri Decl. ¶ 6.

USAS is a Texas company that describes itself, in a "Disclaimer" on its homepage, as "an independent travel service provider that provides affordable travel services. [They] are not associated with Airlines in any way, all branding is for demonstrative purposes only and does not signify any

2

association with any Airlines or organization." *See* https://www.usairlineservicesllc.com.

### A.     US Airline Services' Misrepresentation of Plaintiff's Flight Credit

On or about November 1, 2022, Plaintiff contacted USAS to voluntarily cancel his flights. *See* Compl. ¶ 16; Monteneri Decl. ¶ 6.  In response to the cancellation, Frontier charged a $99 cancellation fee per passenger, per each flight segment and a $92 spoilage fee, which is consistent with Frontier's cancellation policy. Monteneri Decl. ¶ 7.  A travel credit of $217.86 was issued by Frontier to Plaintiff and valid for 90 days, thus expiring on January 31, 2023.  *Id.*

USAS, however, misrepresented the Frontier cancellation policy and erroneously advised Plaintiff he could "cancel his booking and use the credit value (USD 705.87) within one year of the original ticketing date."  Compl. ¶16.  The email continues:

> The travel must be completed by 31 DECEMBER 2023. However, to cancel and to hold the future credit there will be a charge of USD 75.00 per passenger (total $150.00 USD) on your card, on file…The credit will be exclusively applicable with the same airline (FRONTIER AIRLINES), for the same passengers and routing. Additional fare rules may apply.

*Id.*  Neither this email nor any other email communications between Plaintiff and "Travel Desk" are from or with Frontier. Monteneri Decl. ¶¶ 15-17.  None of the telephone numbers provided in these emails is a Frontier Support number. *Id.*  Rather, these numbers are for contacting USAS. *See* Exhibits 1-2. Plaintiff apparently paid the $150 charge described in the email from USAS, but when he contacted Frontier to use the flight credit in August 2023, he learned that it had expired January 2023. Monteneri Decl. ¶ 18.  As a customer service gesture, Frontier issued him a $100 voucher.  *Id.* ¶ 19.

### B.     Frontier's Cancellation and Flight Credit Policies

The terms and conditions in Frontier's COC govern all tickets issued for travel on flights operated by Frontier. Monteneri Decl. ¶ 10. Section 9(A) of the COC, titled *Ticket Validity and Itinerary Changes*, provides that a passenger who voluntarily cancels his flight will only receive a flight credit for the value of the ticket less a service fee and other charges. Such credit is valid for 90 days.  Specifically:

3

> A. Period of Validity
>
> 1) Tickets issued by Frontier are valid for transportation only on the flights and dates shown on the ticket and have no value and are not valid for transportation thereafter. If a passenger cancels a ticket before the scheduled flight departure time, the value of the ticket less a service fee and certain other carrier charges will be retained for 90 days from the date of cancellation in the form of a flight credit….
>
> 2) Except as required by law or as provided in the Contract of Carriage, Frontier shall have no obligation of any kind to reschedule any passengers who cancels a ticket before the scheduled flight departure time or to provide them with any refund or other credit for unused tickets.

*Id.* ¶ 12, Exhibit D. Section 21 of Frontier's COC, titled *Miscellaneous,* contains several relevant terms, including a class action waiver clause that states:

> I. *No Class Action* - Any case brought pursuant to this Contract of Carriage, Frontier's Tarmac Delay Plan, or Frontier's Customer Service Plan may be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.

*Id.* at ¶ 13. Paragraph "J. *Time Limit for Action*" provides that any legal action must be brought by a passenger within six months of the alleged incident." Exhibit D at Sec. 21, ¶ I. Paragraph "K. *Choice of Law*" states that Colorado law governs the COC and "[a]ll right to trial by jury in any action…arising out of or in connection with this Contract of Carriage is irrevocably waived." Monteneri Decl. ¶ 14.

## STANDARD OF REVIEW

To survive a motion to dismiss, the complaint must contain sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court reviewing the sufficiency of the complaint presumes plaintiff's factual allegations are true, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. A motion to enforce a class action waiver should be determined at an early stage in the litigation before discovery begins. *See Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1311 (S.D. Fla. 2020).

Under Rule 12(b)(7), a court may dismiss a case if a party fails to join a required party under Rule 19. In order to do so, the court must find that: (1) the party is a required person under Rule

4

19(a), (2) joinder of the party is not feasible under Rule 19(b), and (3) dismissal is appropriate based on "equity and good conscience." Fed. R. Civ. P. 19(b); *see N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278–79 (10th Cir. 2012); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Intrawest ULC*, No. 13-cv-00079, 2014 WL 1016072, at *2 (D. Colo. Mar. 14, 2014).

## ARGUMENT

### I. PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF SUED THE WRONG PARTY AND FAILED TO JOIN AN INDISPENSABLE PARTY

Simply put, the Complaint does not assert a claim against Frontier and must be dismissed as Plaintiff has sued the wrong party. *See Rollins v. Ingersoll-Rand Co.,* No. 06-cv-00336-REB-PAC, 2006 WL 2990210 (D. Colo. Oct. 19, 2006) (granting motion to dismiss where plaintiff sued wrong party for garnishment claim). Here, the Complaint fails to state a claim <u>against</u> <u>Frontier</u>. Plaintiff's complaint arises from his reliance on a November 1, 2022 email that misrepresents Frontier's cancellation and flight credit policies. As reflected in the Complaint, the November 1 email containing the misinformation is <u>not</u> from Frontier – rather, it is from support@usairlinesservicesllc.com. USAS is the entity contracting and communicating with Plaintiff and the one that misinformed Plaintiff about the amount and expiration period of his flight credit. Compl. ¶ 16. Accordingly, because Plaintiff's own pleading demonstrates that he sued the wrong party, the action must be dismissed.

Alternatively, the Complaint should be dismissed for failure to join a necessary party. The Court cannot render complete relief among the existing parties because Plaintiff has not sued USAS, the party that misrepresented itself as Frontier and defrauded Plaintiff by misinforming him about Frontier's cancellation and flight credit policies. USAS wrongfully charged Plaintiff at least $150 in fees. It is evident that USAS is a necessary party for Plaintiff and Frontier to obtain complete relief.

Because USAS is a "necessary" party under Rule 19(a), the Court must next determine if it is feasible to join it. Fed. R. Civ. P. 19(a). Here, there appear to be jurisdictional challenges to adding USAS as a party, as it is identified on its website as a Texas company and may have contracted with

5

Plaintiff in Indiana. Because it may not be feasible or otherwise possible to join USAS, the Court must consider if, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). To do so, the Court must determine if the absent "necessary" party is also an "indispensable" party using the test in Rule 19(b). *Davis ex rel. v. U.S.*, 343 F.3d 1282, 1289 (10th Cir. 2003) ("A necessary person must be joined as a party if joinder is feasible.").

Here, there is no doubt that the parties will be prejudiced if USAS is not joined in this action. Frontier is confident it can demonstrate as a matter of law it is not liable to Plaintiff; however, Plaintiff would then have wasted the Court and parties' resources while not seeking recovery from the real party at fault, USAS. Plaintiff would be better off pursuing an action against USAS in order to obtain complete relief for his claims. Because USAS is an indispensable party, the action must be dismissed.

## II.     PLAINTIFF WAIVED HIS RIGHT TO BRING A CLASS ACTION AND DEMAND JURY TRIAL

The terms and conditions in Frontier's COC govern all tickets issued for travel on flights operated by Frontier. Monteneri Decl. ¶10. *See Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d at 1309 ("'an airline's 'contact of carriage' is a federally regulated contract that governs the rights of the parties"). Frontier's COC, which is governed by Colorado law (§ 21(K)), expressly bars class action lawsuits. More specifically, § 21(I), titled "No Class Action," unambiguously provides:

> Any case brought pursuant to this Contract of Carriage, Frontier's Tarmac Delay Plan, or Frontier's Customer Service Plan may be brought in a party's individual capacity and *not as a plaintiff or class member in any purported class or representative proceeding.*

Monteneri Decl. ¶ 13, Exhibit D (emphasis added).

Under Colorado law, the class action bar is enforceable. *See Bonanno v. Quizno's Franchise Co., LLC*, Case No. 06-CV-02358, 2009 WL 1068744, *12 (D. Co. April 20, 2009) (enforcing a similar class action bar). Indeed, "[c]ourts applying Colorado law start with the presumption that a contract clause is enforceable." *Id.* at *17. Likewise, the Federal Aviation Regulations do not prohibit such a class action bar. *See, e.g.*, *Bombin v. Southwest Airlines Co.*, 2023 WL 5832166, *11–12 (E.D. Pa. Sept. 7,

6

2023) (rejecting plaintiffs' argument that a class action bar in airline's COC was prohibited by the FARs and enforcing same against plaintiffs).

Courts consistently enforce similar class action bars found in other airlines' contracts of carriage.[5] Like in *Roman v. Spirit Airlines, Inc.*, the Eleventh Circuit affirmed dismissal of plaintiffs' class action claims, holding that the claims, which related to optional security services offered to ticketed passengers, fell within the scope of the class action waiver clause in the airline's COC. No. 20-13599, 2021 WL 4317 318, at *1-2 (11th Cir. 2021). Plaintiffs, thus, were obligated to bring their claims individually. *Id.* at *2. *See also Covino v. Spirit Airlines, Inc.*, 406 F. Supp. 3d 14 7, 152 (D. Mass. 2019) (granting airline's motion to dismiss where COC included class action waiver clause). Most recently, in *Bombin v. Southwest Airlines, Co.*, the court denied plaintiffs' motion for class certification in a breach of contract, enforcing the class action waiver language in the airline's COC and finding that plaintiffs were not adequate class representatives because "they agreed to terms preventing claims against Southwest in the form of a class action lawsuit." 2023 WL 5832166 at *1, 11–12.

Plaintiff's claims here relate to Frontier's cancellation, refund and flight credit policies. These rules are directly addressed in Section 9 of the COC, which provides a 90-day period for use of any flight credit following a voluntary cancellation. Monteneri Decl., ¶ 13, Exhibit D. Because Plaintiff's claims arise from the cancellation and flight credit policies in the COC, they are governed by the COC's class action bar. For this reason alone, Plaintiff's Complaint should be dismissed.

Furthermore, pursuant to § 21(k) of the COC, Plaintiff expressly agreed that "[a]ll right to trial by jury in any action, proceeding or counterclaim arising out of or in connection with this Contract is irrevocably waived." *Id.* at 62 § 21(k). "Parties may . . . contract to waive their right to a jury trial, and agreements waiving the right to trial by jury are neither illegal nor contrary to public policy." *See Müler*

---

[5]  *See also Hahn v. JetBlue Airways Corp.*, No. 1:21-cv-0687-NRM-LB, (Doc. 20) (E.D.N.Y. Aug. 25, 2022) (granting JetBlue's motion to dismiss based on class action waiver in its COC).

*v. Prospect Mortgage, LLC*, 2014 WL 667363, *1 (D. Colo. Feb. 21, 2014). "Jury waiver provisions are enforceable if they are knowing and voluntary." *Id.* Plaintiff's waiver was knowing and voluntary, and Plaintiff has not, and cannot, allege otherwise. First, the jury trial waiver provision in the COC is clear, conspicuous, and stated in plain language. *See* Monteneri Decl., ¶ 15, Exhibit D; *see also PostNet Intern. Franchise Corp. v. Amercis Intern., Inc.,* 2006 WL 1775599, *2 (D. Colo. June 26, 2006). Second, Plaintiff affirmatively agreed to the COC, and has not alleged any lack of sophistication that would undermine such agreement. *See id.* at *3. Finally, while the jury trial waiver was not the subject of negotiation, Plaintiff was free to reject the COC and refrain from purchasing from Frontier. *Id.*

### III.  **PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED BY THE ADA**

Plaintiff's state-law claims are preempted by federal law and must be dismissed. Federal law can preempt state law either expressly or by implication. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *Schneberger v. Air Evac EMS, Inc.,* 749 Fed. App'x 670, 676 (10th Cir. 2018). Here, the ADA expressly preempts his state-law claims as they relate to Frontier's "prices" and "services."

#### A.  **The ADA's Broad Construction Mandates Dismissal**

Congress enacted the ADA in order to deregulate the airline industry and ensure "maximum reliance on competitive market forces," which would further "efficiency, innovation and low prices" in the airline services market. *Schneberger*, 749 Fed. App'x at 676. To ensure that states would not interfere with federal deregulation of the airline industry, an express preemption provision was included in the ADA to prevent states from enacting or enforcing laws that would improperly regulate airline business practices. *Morales*, 504 U.S. at 378-79. The ADA preemption clause provides that:

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law **related to a price, route, or service of an air carrier** that may provide transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added). The ADA's "related to" language is broadly construed to include state law claims "having a connection with or reference to airline '[prices], routes, or services'."

8

*Morales*, 504 U.S. at 383-84; *see Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995); *Schneberger*, 749 Fed. App'x at 676 (confirming ADA's "broad preemptive purpose").  Preemption is construed so broadly that it occurs even where the effect on prices, routes, and services is only indirect.  *See Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, 370 (2008).[6] ADA preemption also extends to "laws of general applicability," to state laws that are "consistent" with federal laws, and to common law claims.  *Morales*, 504 U.S. at 386-87; *see Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283-84 (2014).

The Supreme Court has addressed the scope of the ADA in a trilogy of cases.  In *Morales*, the Court found that state attorney general guidelines fell within the ADA's broad preemptive scope and struck them as the guidelines attempted to set standards regarding the content and format of airline advertising. 504 U.S. at 385. A few years later, in *Wolens,* the Court held that the ADA preempted fraud claims under the Illinois consumer protection statute because the claims, which related to retroactive changes to the airline's frequent flier program, sought to regulate the airline's prices and marketing practices. 513 U.S. at 225. And, while *Wolens* recognized a narrow exception from preemption where a state-law claim sought recovery for the airline's alleged breach of "its own, self-imposed undertaking" (*id.* at 228), only the parties' bargain could be enforced "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233.  Finally, in *Ginsberg*, the Court reaffirmed the ADA's breadth and held that the ADA preempted plaintiff's implied covenant of good faith and fair dealing claim arising from his termination from a loyalty program.

Applying the broad construction afforded the ADA under Supreme Court precedent, Plaintiff's state law claims here are obviously federally preempted and must be dismissed as well.

### B.  Plaintiff's State-Law Claims Relate To "Prices" And "Services"

Because Plaintiff's state law claims arise from his inability to used expired flight credits to

---

[6]  *Rowe* applied *Morales* in interpreting a similarly-worded preemption provision applicable to motor carriers. *See* 49 U.S.C. § 1450(c)(1).

9

purchase and rebook a flight, they plainly relate to Frontier's "prices" and "services."[7]  In *Wolens* and *Ginsberg,* the plaintiffs' claims were held connected to an airlines' "prices" because the mileage awards in their respective frequent flier programs could be redeemed for travel and when used in this way, the price a customer pays is "either eliminated or reduced."  *Ginsberg*, 572 U.S. at 284; *see Wolens,* 513 U.S. at 226.  Similarly, the flight credits issued to Plaintiff could have been used toward the future purchase of flights on Frontier. Such claims also relate to airline "services" as the allegedly unusable flight credits are intended to provide passengers access to airline flights and services.  *Id.*

Instructive is *Martin v. United Airlines*, 2017 WL 3687347 (W.D. Okla. Apr. 18, 2017), *aff'd,* 727 Fed. App'x 459 (10th Cir. Feb. 21, 2018), where plaintiffs' breach of contract and tort claims arising from voluntary cancellation of their flights and use of flight credits were held preempted.  Plaintiffs challenged the conditions imposed on the credits, namely (1) they be used within one year from issuance, (2) required payment of additional funds, and (3) required telephoning the airline to book with the credits.  Plaintiffs further argued that defendant improperly kept additional funds paid by plaintiffs for certain fees.  The court held that the tortious breach of implied covenant of good faith claim was preempted, as was the contract claim for money wrongfully withheld by defendant, finding it akin to unjust enrichment and based on state-imposed obligations.

In examining the breach of contract claims based on failure of consideration and to fulfill reasonable expectations, the court held that "[b]y purchasing a ticket/eticket from defendant for transportation on its aircraft, plaintiffs agreed to be bound by defendant's [COC]." *Id.* at *6.  Applying the COC's terms, the court concluded that non-refundable tickets, like those purchased by plaintiffs, are valid for only specific flights and for one year, and the airline may allow a passenger to apply a portion of the credit to a new ticket after paying change fees.  Because the airline acted "within conformity with the [COC]," the court dismissed the breach of contract claims. *Id.*

---

[7]     The ADA defines a "price" as a "a rate, fare or charge." 49 U.S.C. § 40102(a)(39).

10

On appeal, the Tenth Circuit affirmed, finding that plaintiffs were attempting to "change the terms of the contract." 727 F. App'x at 463. Significantly, the court held that the contract's terms were neither ambiguous nor unconscionable. *Id.* The Tenth Circuit expressly found "no procedural unfairness" in the airline's policies as the airline offered plaintiffs the option of cheaper, nonrefundable tickets and thus plaintiffs were bound by the conditions imposed on those tickets in the COC. *Id.*

Like *Martin*, Plaintiff's state law unjust enrichment, breach of warranty and tort claims are all expressly preempted by the ADA. They undisputedly relate to Frontier's prices and services. Plaintiff's state law contract claim, likewise, is preempted (as explained below) because it expands the airline's obligations beyond the COC. Additionally, Plaintiff's claims are more akin to state consumer protection claims that are consistently held preempted by the ADA. *See Morales,* 504 U.S. at 389-90; *Wolens*, 513 U.S. at 228 (ADA preempted claims under Illinois consumer fraud statute); *Bailey v. Rocky Mtn. Holdings,* 889 F.3d 1259, 1268-69 (11th Cir. 2018) (affirming preemption of FDUPTA claim).

### C.   Plaintiff's Breach of Contract Claim Does Not Satisfy The *Wolens* Exception

The narrow exception in *Wolens* for a breach of contract claim that arises from "the airline's alleged breach of its own, self-imposed undertaking" does not apply here. 513 U.S. at 229. Contract claims remain preempted if they enlarge or enhance the parties' bargain based on state laws or policies. *Id.* at 233. In *Schneberger v. Air Evac EMS,* the Tenth Circuit affirmed preemption of the plaintiffs' breach of contract claim which was not based on any breached term within the four corners of the contract, but rather relied on concepts of "fairness and reasonableness." 749 Fed. App'x at 678. Where a court would need to insert terms or look outside the contract to enforce an alleged meaning, it is plainly relying on state-law theories or policies and is not enforcing a "self-imposed obligation." *See, e.g.*, *Alatortev v. JetBlue Airways, Inc.,* No. 3:17-04859-WHO, 2018 WL 784434, at *6-7 (N.D. Cal. Feb. 7, 2018) (breach of contract claim preempted where it enlarged the parties' agreement).

For example, in *Bevaqua v. Southwest Airlines*, Co., 2023 WL 5918924 (N.D. Tex. Sept. 8, 2023),

11

*appeal filed,* (5th Cir. Oct. 11, 2023), plaintiffs' breach of contract claims were preempted because they relied on application of a *federal regulation* external to the COC. Specifically, plaintiffs argued that after cancelling their flights, the airline improperly converted the money that went toward the TSA security service fee into travel credit, rather than providing a refund as purportedly required by federal regulation. *Id.* at *4-5. Because the federal regulation was external to the COC and enhanced the airline's obligations, the claims fell outside the scope of the *Wolens* exception and were barred. *Id.*

This is precisely what Plaintiff's claim does here. Plaintiff is seeking to impose greater obligations on Frontier than required by the COC. Frontier's COC is clear regarding the 90-day expiration period for flight credits.[8] For Plaintiff to succeed here, he would be inserting terms not contained in the COC, relying on alleged misrepresentations by an unauthorized party that would change the COC, and using state-law theories to work around the terms of the COC. This is inconsistent with *Wolens* and mandates dismissal of his contract claims. *Schneberger,* 749 F. App'x at 678-79 (affirming preemption breach of contract claim); *see also Miller v. Delta Air Lines, Inc.*, No. 4:11-cv-100990-JLK, 2012 WL 1155138, *2 (S.D. Fla. Apr. 5, 2012) (finding misrepresentation claims about reimbursement amounts for delayed baggage "go far beyond the obligations" in COC).

## IV.    PLAINTIFF'S CLAIMS ARE IMPLIEDLY PREEMPTED

Because Plaintiff's state-law claims relate to an area pervasively regulated by the federal government, they also are impliedly preempted under the Federal Aviation Act. *See City of Burbank v. Lockheed Air Term., Inc.*, 411 U.S. 624, 633 (1973) (finding "pervasive nature" of federal regulation of aircraft noise preempted city's ordinance). The language of the FAA expressly vests the Federal Aviation Administrator with authority to preempt subfields of air commerce by using its authority to develop regulations. By enacting regulations concerning airline cancellation and refund policies,[9]

---

[8]    Because Plaintiff pleads breach of contract, Frontier rightfully provides the Court with its COC that govern Plaintiff's contract claims as to Frontier.

[9]    *See, e.g.*, 14 C.F.R. §259.5(b)(4) (allowing refund when cancellation within 24-hours of booking).

12

Congress intended that DOT alone regulate deceptive and fraudulent claims in this consumer protection area. *See* 49 U.S.C. § 41712 (DOT has plenary authority to "investigate and decide whether an air carrier ... has been or is engaged in an unfair or deceptive practice"); *Ginsberg*, 572 U.S. at 289 (same); *Wolens*, 513 U.S. at 228 n.4.

Because Plaintiff's claims, at their core, are based on allegedly unfair and deceptive practices in issuance of a flight credit, they must be rejected as preempted by the FAA as well. *See Bailey,* 889 F.3d at 1268-69 (recognizing DOT's power to enjoin unfair and deceptive practices by air carriers); s*ee also* Final Rule, *Defining Unfair or Deceptive Practices*, 85 F.R. 78707, 78708 (Dec. 7, 2020) (Congress granted the DOT "the exclusive authority to prohibit unfair or deceptive practices of air carriers").

## V.     PLAINTIFF'S CLAIMS ARE FACIALLY DEFICIENT

### A.     Plaintiff's Breach of Contract Claim Fails

Plaintiff purports to bring a claim for breach of contract (Count VII), alleging that Frontier subjected itself to a contractual obligation based on the November 1, 2022 email from USAS. Frontier, however, did not send this email, and, moreover, the actual terms of the contract of transportation in place between Plaintiff and Frontier (stated in the COC) refute such a claim.

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Frontier contends that Plaintiff has not and cannot allege facts sufficient as to breach. Specifically, Plaintiff has failed in the Complaint to identify any actual provision of the COC that *Frontier* allegedly breached. For this reason alone, Plaintiff's breach of contract claim must fail. *See Snyder v. ACORD Corp.*, 2016 WL 192270, *12 (D. Colo. Jan. 15, 2016) ("Plaintiffs' claim for breach of the [contract] fail because Plaintiffs have not identified any provisions of the [contracts] or explained how Defendants breached them."). Moreover, like the contract claims in *Martin v. United*

13

*Airlines*, *supra,* the express terms of the COC provide for a 90-day expiration period for flight credits and, thus, refute any breach and mandate dismissal. *See* 727 F. App'x at 463 (affirming dismissal of breach of contract claims where airline acted in conformity with the terms of the COC).

### B. Plaintiff's Tort Claims (Counts I, II, VIII, IX, and X) Are Barred

Plaintiff's claims sounding in tort—including negligence, negligent misrepresentation, strict liability for misrepresentation, fraud, and fraudulent misrepresentation—are barred by the economic loss rule and must be dismissed. More specifically, Plaintiff's tort claims are based on allegations that Frontier failed to honor his flight credit beyond the expiration period—exactly the same alleged conduct and alleged injury as his breach of contract claim. The relationship between Plaintiff and Frontier as well as their respective obligations regarding the flight credits are governed by the COC. "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo. 2004). Frontier's obligations regarding the flight credits issued to Plaintiff arise under the COC (and Plaintiff indeed purports to allege a breach of contract claim) – not any independent duty of care under tort law.

Furthermore, Plaintiff's claims do not satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires Plaintiff to plead with particularity that *Frontier* made false statements upon which he reasonably relied. *See Dean v. Wright Medical Tech., Inc.*, 593 F. Supp. 3d 1086, 1096 (D. Colo. 2022). Here, since the emails on which Plaintiff relies are plainly not from a Frontier email address or employee, Plaintiff's allegations fail to demonstrate that a Frontier employee made misrepresentations, when they were made, and in what context, in a manner sufficient to satisfy Rule 9(b).

### C. Plaintiff's Unjust Enrichment Claim Is Barred

Similarly, Plaintiff's unjust enrichment claim is based on his expired flight credit and thus duplicative of his breach of contract claim. Again, Plaintiff and Frontier's obligations for use of a

voucher or flight credit are governed by an express contract—the COC. "A claim for unjust enrichment may not be asserted if there is a valid contract covering the subject matter of the alleged obligation to pay." *Kiosk Information Systems, Inc. v. Cole Kepro International, LLC*, No. 23-CV-00352, 2023 WL 4269409, *10 (D. Colo. June 29, 2023). Moreover, since Plaintiff has not alleged that the COC is unenforceable, it is inappropriate to bring such a claim in the alternative. *Id.*

### D. Plaintiff's Breach of Warranty Claims (Counts IV–VI) Are Barred

Plaintiff's warranty claims must be dismissed because airline tickets and flight credits are not "goods" as contemplated by Colorado's UCC. Warranty causes of action under the UCC may only arise from the sale of goods. *See, e.g., Thomas v. Cummins Engine Co.*, 2015 WL 708484 (D. Colo. Feb. 18, 2015) (parties agreed action involved sale of goods and therefore covered by UCC). The sale of air transportation, however, is not a sale of goods under the UCC.

### E. Plaintiff's Claims Are Untimely

Plaintiff canceled his flights on November 1, 2022 and his flight credit expired on January 31, 2023. Because Plaintiff filed his action on September 20, 2023—more than six months after expiration of the flight credit—his claims must be dismissed with prejudice pursuant to § 21(J) of the COC. *See Roman,* 482 F. Supp. 3d at 1316 (dismissing with prejudice claims filed after COC's 6-month limitation period); *Covino*, 406 F. Supp. 3d at 152-53 (same).

### CONCLUSION

For the reasons set forth above, Frontier requests an Order: (1) dismissing the Complaint under Rule 12(b)(6) as Plaintiff sued the wrong party, or alternatively dismissing the Complaint under Rule 12(b)(7) because the Complaint fails to join a necessary party; (2) dismissing the Class Action as Plaintiff waived any right to bring such claims; (3) dismissing the causes of action as preempted by federal law; (4) dismissing all claims as they are not otherwise cognizable in law or fact; and (5) for all other relief that the Court deems just and proper.

Respectfully submitted December 11, 2023.

/s/ *Anna S. Day*
Anna S. Day, #50725
Holland & Knight LLP
1801 California Street, Suite 5000
Denver, Colorado 80202
Telephone: (303) 974-6660
Facsimile: (303) 974-6659
Email: anna.day@hklaw.com

*Attorney for Defendant Frontier Airlines, Inc.*

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 11th day of December, 2023, a true and correct copy of the foregoing was filed via CM/ECF and served electronically through CM/ECF on the following:

Blake Garrett Abbott
Paul J. Doolitte
Poulin Willey Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
Email: blake@akimlawfirm.com
   paul.doolittle@poulinwilley.com

*Attorneys for Plaintiff*

                */s/ Anna S. Day*
                Anna S. Day

17